# United States District Court
# District of Massachusetts

DON FIRENZE,
        Plaintiff,

     v.                           CIVIL ACTION NO. 12-10880-PBS

NATIONAL LABOR RELATIONS BOARD,
NATIONAL LABOR RELATIONS
       BOARD UNION,
          Defendants.

## *REPORT AND RECOMMENDATION ON MOTION TO DISMISS (#8) AND DEFENDANT NLRB'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION (#15)*

COLLINGS, U.S.M.J.

### *I. Introduction*

On May 16, 2012, Plaintiff Don Firenze ("Firenze") filed a three-count

complaint (#1) against the National Labor Relations Board ("NLRB") and the

National Labor Relations Board Union ("NLRBU").  Firenze is an attorney with the NLRB's Boston Regional Office.  He is represented in collective bargaining and related employment matters by the NLRBU, a federal-sector union organized under the Federal Service Labor-Management Relations Act ("FSLMRA"), 5 U.S.C. § 7101, *et seq.*, Title VII of the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C. § 1101, *et seq.*

Count I of the complaint alleges that the NLRB violated Article 4 of the collective bargaining agreement by issuing three suspensions, two warnings, and a poor 2009 annual performance appraisal against Firenze. (#1 ¶ 41) Count II alleges that the NLRB violated Firenze's First Amendment right to free speech by imposing a prior restraint of speech on its employees and not allowing him to "publicize" his grievances while at work. (#1 ¶ 42)  Count III alleges that the NLRBU violated its statutory and contractual duty of fair representation when it reached a settlement with the NLRB over grievances that were slated for arbitration. (#1 ¶ 43)

The NLRB and NLRBU have filed motions to dismiss the complaint for lack of subject matter jurisdiction. (##8, 15, 16[1])  The NLRBU has also filed

---

[1]

Docket ##15 and 16 are part of the same motion to dismiss for lack of subject matter jurisdiction filed by the NLRB.

a motion to dismiss Count III of the complaint for failure to state a claim upon which relief can be granted. (#8[2])

Firenze has filed a brief in opposition to the NLRB's motion to dismiss (#24), and a motion for partial summary judgment with respect to subject matter jurisdiction. (#18) The plaintiff has also filed a motion for leave to exceed page limits in which he includes a brief in opposition to the NLRBU's motion to dismiss and a brief in support of a motion for partial summary judgment. (#17[3]) The NLRBU has filed an opposition to the motion to exceed page limits (#19), to which Firenze filed a reply brief. (#22)  The NLRB and NLRBU have also filed motions in opposition to the motion for partial summary judgment. (##26, 23)  At this time, the motions to dismiss stand ready for decision.

## II. Factual Background

The legal claims that comprise the subject matter of the complaint arose out of a series of labor disputes that occurred during the course of Firenze's

---

[2]

Docket #8 is a motion to dismiss for both lack of subject matter jurisdiction and failure to state a claim.

[3]

This motion was granted by an Electronic Order entered 08/10/2012 and counsel was directed to "file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures.  Counsel must include - Leave to file granted on (date of order) - in the caption of the document." A review of the docket reveals that this filing has not been submitted so reference shall be made to docket #17.

employment with the NLRB's Boston Regional Office. From 2009 to 2010, Firenze filed six grievances under the collective bargaining agreement's grievance and arbitration provisions.

The first grievance was in response to a written warning Firenze received in connection with the *Classic Lath* case. Firenze had requested to be removed from the case because he considered it to be barred by the six month statute of limitations. When Firenze was not removed from the case, he allegedly dragged his feet in drafting injunction papers. (#1 ¶ 6)

The second grievance was in response to an annual performance appraisal issued on June 10, 2009 for Firenze's work in the preceding year. Under the "critical element" quality of work category, Firenze received a "Minimally Successful" rating for his performance in the *Classic Lath* case, as well as three other cases. (#1 ¶ 34(a))

The third grievance was in response to a three-day suspension. The grounds for suspension included interference with the investigation of a case and violation of the Information Officer confidentiality requirement. Firenze was said to have revealed potentially damaging information to parties prior to a full investigation, reached a premature determination that the claim was without merit, and created the impression that he had the authority to make

4

unfair labor practice claim determinations. (#1 ¶ 35)

The fourth grievance was in response to a written warning Firenze received for an alleged violation of a provision of the ULP Manual pertaining to the Information Officer function. On February 24, 2010, Firenze sent an e-mail to an attorney involved in the Supreme Court litigation against the NLRB. He wrote that the NLRB engaged in a "denial of due process" when it decided a case for "institutional reasons," rather than on the merits. (#1 ¶ 37)

The fifth grievance was in response to a 7-day suspension for disrespectful and inappropriate conduct toward a supervisor, and for failure to follow confidentiality requirements regarding an investigative affidavit. (#1¶ 36(a), (b))

The sixth grievance was in response to a 10-day suspension for disrespectful conduct toward the Regional Director. (#1 ¶ 38)

Pursuant to the collective bargaining agreement's grievance and arbitration provisions, the NLRBU referred Firenze's six grievances for arbitration.  On December 27, 2011, a settlement was reached with the NLRB. (#1 ¶¶ 6, 29-39)  Firenze's first, fourth, and sixth grievances were expunged from his record.  Only the second, third, and fifth grievances remain. (#1 ¶ 40; #16 ¶ 10)

On January 5, 2011, Firenze wrote to the NLRB to express his desire to publicize the fact that the NLRBU had filed for arbitration with respect to the six grievances. (#1 ¶ 39)  The NLRB sent an e-mail in response, stating in part that:

> ... the Agency [of the NLRB] is concerned that *any* communications regarding your suspensions or other disciplinary action with parties to our cases or to members of the public contacting the NLRB about NLRB matters would undermine the integrity of the Agency and its ability to effectuate the [National Labor Relations] Act... You may not communicate *in any way* about any discipline by the Agency with parties, lawyers, other representatives, and witnesses to your cases or other members of the public who contact the NLRB about NLRB matters...

(#1 ¶ 39) (emphasis in original).

The plaintiff was and is the President of NLRBU Local One. (#1 ¶ 40)  In response to the e-mail, Firenze, presumably in his representative capacity, filed an unfair labor practice charge with the Regional Office of the Federal Labor Relations Authority ("FLRA").[4]  The charge against the NLRB was that "[t]he Agency is enforcing a rule that the NLRB Union[4] may not publicize its

---

[4]

Both sides discuss this charge in their memoranda (#16 at 9 and # 24 at 4) and, at the Court's request (*see,* #27), the NLRB has filed copies of the charge and related documents. *See* #28.

[4]

Although the Charging Party on the Charge Against An Agency form is noted to be Don Firenze and not the union, and the charge is signed simply by Don Firenze with no indication of representative capacity,

grievances."  The charge was dismissed and the Office of the General Counsel at the FLRA Headquarters upheld the dismissal on appeal. (#28)

### III. The Applicable Law

Pursuant to Rule 12(b)(1), Fed. R. Civ. P., a defendant may move to dismiss an action based on lack of federal subject matter jurisdiction. Because federal courts are considered courts of limited jurisdiction, "[t]he existence of subject-matter jurisdiction 'is never presumed.'" *Fafel v. Dipaola*, 399 F.3d 403, 410 (1st Cir., 2005) (quoting *Viqueira v. First Bank*, 140 F.3d 12, 16 (1st Cir., 1998)). Rather, "'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.), *cert. denied*, 515 U.S. 1144 (1995) (quoting *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir.), *cert. denied*, 510 U.S. 823 (1993)); *Johansen v. U.S.*, 506 F.3d 65, 68 (1st Cir., 2007). Once a defendant challenges the jurisdictional basis for a claim under Rule 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942); *Johansen*, 506 F.3d at 68.

When reviewing a motion to dismiss for lack of subject matter

---

the nature of the charge itself indicates that it is being advanced on behalf of the union of which Firenze is President. (#28)

jurisdiction, the court "'credit[s] the plaintiff's well-pled factual allegations and draw[s] all reasonable inferences in the plaintiff's favor.'" *Sanchez ex rel. D.R.-S. v. United States*, 671 F.3d 86, 92 (1st Cir., 2012) (quoting *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir., 2010)). The First Circuit has recently explained the principles at play in the well-pled complaint rule:

> In resolving a motion to dismiss, a court should employ a two-pronged approach. It should begin by identifying and disregarding statements in the complaint that merely offer legal conclusion[s] couched as … fact or [t]hreadbare recitals of the elements of a cause of action. A plaintiff is not entitled to proceed perforce by virtue of allegations that merely parrot the elements of the cause of action. Non-conclusory factual allegations in the complaint must then be treated as true, even if seemingly incredible. If that factual content, so taken, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, the claim has facial plausibility. The make-or-break standard … is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.
>
> Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable. Nor may a court attempt to forecast a plaintiff's likelihood of success on the merits; a well-pleaded complaint may proceed even if … a recovery is very remote and unlikely. The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw

from the facts alleged in the complaint.

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12-13 (1st Cir., 2011) (internal citations, parentheticals, and quotation marks omitted).

The "court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir., 2010) (quoting *Aversa v. United States*, 99 F.3d 1200, 1210 (1st Cir., 1996)); *Carroll v. United States,* 661 F.3d 87, 94 (1st Cir., 2011) ("In evaluating a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, we construe plaintiffs' complaint liberally and ordinarily may consider whatever evidence has been submitted, such as ... depositions and exhibits.") (internal citation and quotation marks omitted). That being said, a plaintiff cannot assert a proper jurisdictional basis "merely on 'unsupported conclusions or interpretations of law.'" *Murphy*, 45 F.3d at 522 (quoting *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir., 1993); *Johansen*, 506 F.3d at 68.

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim upon which relief can be granted. In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'"

*Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir., 2011) (quoting *Artuso v. Vertex Pharm, Inc.*, 637 F.3d 1, 5 (1st Cir., 2011)). "[T]he complaint must 'contain sufficient factual matter... to state a claim to relief that is plausible on its face.'" *Haley*, 657 F.3d at 46 (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)) (further internal quotations and citation omitted) (alteration in original). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from the documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 342 F.3d 12, 15 (1st Cir., 2003)).

### *IV. Discussion*

Firenze has alleged that three statutes confer subject matter jurisdiction for the complaint to be heard in federal court. He claims jurisdiction for Count I under 28 U.S.C. §1331 and 5 U.S.C. §702, Count II under 28 U.S.C. §1331, and Count III under either 28 U.S.C. §1331 or 28 U.S.C. §1367. The NLRB and NLRBU challenge the jurisdictional grounds for Counts I and II, and Count III, respectively, under Title VII of the CSRA, 5 U.S.C. §7101 *et seq.* Each of the three counts in the complaint is addressed in turn with respect to the applicable statutes.

## A. Count I

Count I of the complaint alleges that the NLRB violated the fair treatment provision of the collective bargaining agreement by imposing disciplinary measures against Firenze. (#1 ¶ 41)  Firenze asserts that the Court has original jurisdiction over this claim because the collective bargaining agreement "draws its force" from 5 U.S.C. §§7102(2) and 7116(a)(5).  Therefore, the agreement "arises under Title VII within the meaning of §1331." (#17 at 40) Despite these assertions, the Court does not have jurisdiction to hear the breach of contract claim.

For the Court to have original jurisdiction over a civil claim, it must arise under "the Constitution, laws, or treaties of the United States." Title 28 U.S.C. §1331.  Because this claim does not arise under the Constitution or a treaty, the law governing labor-management relations in the federal sector is consulted in determining whether jurisdiction exists.  Title 5 U.S.C. §7121 explains what recourse is available to employees with respect to "grievances" - any complaint concerning "the effect or interpretation, or a claim of breach, of a collective bargaining agreement." Title 5 U.S.C. §7103(a)(9)(C)(I).

The statute states in relevant part that:

(a)(1) Except as provided in Paragraph (2) of the

subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d), (e), and (g) of this section, the procedures shall be the *exclusive* administrative procedures for resolving grievances which fall within its coverage.

...

**(b)(1)** Any negotiated grievance procedure referred to in subsection (a) of this section shall-

...

**(iii)** provide that any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration [by the Merit Systems Protection Board, ("MSPB")] which may be invoked by either the exclusive representative or the agency.

Title 5 U.S.C. §7121 (emphasis added).

Subsection (e) provides that under Chapter 75 of the CSRA, the only grievances which may be brought before the court for judicial review are removal, suspension for more than 14 days, reduction in grade or pay, or furlough for 30 days or less. *Id.*; Title 5 U.S.C. §7512. Subsections (d) and (g) are not applicable.

Congress' intent in enacting this statute, and the CSRA in general, was to "entirely foreclose judicial review to employees to whom the CSRA *denies* statutory review." *Elgin v. Department of Treasury*, - U.S. - , 132 S. Ct. 2126, 2133 (2012)(emphasis in original); *see also United States v. Fausto*, 484 U.S.

439, 450 (1988) ("Chapter 75 makes MSPB review, and hence judicial review, generally unavailable for minor adverse personnel action, including suspensions of less than 14 days.").  Furthermore, Congress intended to draft the CSRA in such a way that those employees "who *are* given review rights by Chapter 75, cannot expand these rights by resort to" judicial review outside of the CSRA scheme. *Fausto*, 484 U.S. at 450, n. 3 (emphasis in original); *see also* Title 5 U.S.C. §7503.

Firenze concedes that his grievances are not of the type that are afforded judicial review under the plain language of §7121(a)(1). (#17 at 45, n. 12) He argues, nevertheless, that "Title VII ineluctably implies that federal agencies subject to Title VII may be sued on their collective bargaining agreements in federal district court." (#17 at 44)   Considerable arguments have been advanced on this point. (#17 at 40-55)   For instance, Firenze contends that a breach of the collective bargaining agreement is not an unfair labor practice, so allowing such a claim to be heard in district court would not interfere with the authority of the FLRA. (#17 ¶ 54)   This argument is not compelling because it is the authority of the MSPB, not the FLRA, that would be affected if the breach of contract claim was heard in this Court.

The Court declines to disregard the plain language of the CSRA, the clear

13

congressional intent behind the statutory scheme, and the federal jurisprudence with respect to such grievances.  The CSRA is good law, and as such, its provisions will be followed.

The Administrative Procedure Act, 5 U.S.C. §702, is advanced as an additional grounds for jurisdiction. The relevant portion of the statute states that:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.... Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

Title 5 U.S.C. §702.

Although the statute allows for judicial recourse for an alleged legal wrong or adverse effect of agency action, it does not independently confer jurisdiction where another statute forecloses the claim from being brought in federal court. *See Conservation Law Found., Inc. v. Busey*, 79 F.3d 1250, 1261 (1st Cir. 1996) (while the "APA does not provide an independent source of subject matter

14

jurisdiction, it does provide a federal right of action where subject matter jurisdiction exists"). Because 5 U.S.C. §7121 does not allow for judicial review of the alleged breach, 5 U.S.C. §702 cannot confer jurisdiction for this claim.

Accordingly, the Court does not have subject matter jurisdiction over Count I of the complaint.

## B. Count II

Count II of the complaint alleges that the NLRB violated the First Amendment of the United States Constitution by imposing a prior restraint of speech on its employees and not allowing Firenze to publicize his grievances while at work. (#1 ¶¶ 39, 42) It is well-established that this Court has original jurisdiction over "all civil actions arising under the Constitution" of the United States. Title 28 U.S.C. §1331. Notwithstanding this jurisdictional grant, the NLRB has made two arguments challenging the jurisdictional basis for this claim.

The first argument is that the Court lacks jurisdiction because decisions made by the FLRA not to issue a complaint are "final and not subject to judicial review." (#16 ¶ 22) Therefore, according to the NLRB, the FLRA's decision to dismiss Firenze's charge of an unfair labor practice precludes the claim from being heard in the district court.

The NLRB correctly asserts that the FLRA has jurisdiction over unfair labor practice claims. Title 5 U.S.C. §7118(a)(1). Furthermore, decisions made by the FLRA not to issue a complaint are final. If the General Counsel determines that the unfair labor practice claim lacks merit, then the Court does not have jurisdiction to review the decision. *See Martinez v. Smith*, 768 F.2d 479 (1st Cir. 1985) (holding district court lacks jurisdiction to review General Counsel's decision not to issue complaint where there is no evidence that General Counsel violated statutory requirements or constitutional rights of employee).

That having been said, although the General Counsel did determine that the unfair labor practice complaint lacked merit, that charge related to union activity, not activity undertaken by Firenze personally. (#24 ¶ 3 ("The only issue before the FLRA General Counsel with respect to Plaintiff's unfair labor practice charge referred to by the NLRB was whether publicizing labor disputes is protected union activity within the meaning of §7102 of Title VII"); #28) The claim here is whether the NLRB's "order constitutes a prior restraint of speech" on Firenze as an individual, not as a union representative. (#1 ¶¶ 39, 42)  The fact that the FLRA went beyond the issue raised in the unfair labor practice charge and addressed both union activity and personal activity in

denying the issuance of a complaint does not foreclose the plaintiff from bringing the claim he now advances.

The second argument is that the Court lacks jurisdiction because Firenze failed to file a complaint with the United States Office of Special Counsel ("OSC") prior to filing the claim in federal court. (#16 ¶ 23)

The Supreme Court has recently reiterated the importance of pursuing administrative remedies in the CSRA prior to seeking judicial review of a claim. *Elgin*, 132 S. Ct. at 2132 (requiring plaintiffs to appeal to MSPB prior to bringing claim in the Federal Circuit where plaintiffs' claim challenged the constitutionality of the federal statute requiring their removal); *see also Irizarry v. United States*, 427 F.3d 76 (1st Cir. 2005) (requiring plaintiff to exhaust administrative remedies in the CSRA prior to bringing claim in federal court where the claim challenges the constitutionality of his transfer). However, the only claims that the CSRA requires be brought before the OSC are those involving "prohibited personnel practices." Title 5 U.S.C. §1212(a)(2); *see Gilding v. Carr*, 608 F. Supp.2d 1147, 1151 (D. Ariz. 2009) ("In determining whether the CSRA preempts a claim, the court looks to the conduct challenged in the lawsuit to determine whether it falls within the scope of the CSRA's prohibited personnel practices.")(internal quotation marks

17

and citations omitted).

By definition, a "'prohibited personnel practice' means any action described in subsection (b)" of 5 U.S.C. § 2302. Title 5 U.S.C. § 2302(a)(1). The potentially applicable action is found at § 2302(b)(12), which provides:

> Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority -
>
> ...
>
> take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title.

Title 5 U.S.C. § 2302(b)(12).

In turn, referenced § 2301(b)(2) states that

> All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, martial status, age, or handicapping condition, and with proper regard for their privacy and constitutional rights.

Title 5 U.S.C. § 2301(b)(2).

In sum, "it is a 'prohibited personnel practice' to take a personnel action that unconstitutionally burdens an employee's speech." *Weaver v. United States Information Agency*, 87 F.3d 1429, 1432 (D.C. Cir. 1996), *cert. denied*, 520

U.S. 1251 (1997).

A "personnel action" is defined as

> (I) an appointment; (ii) a promotion; (iii) ...[a]
> disciplinary or corrective action; (iv)... a transfer...; (v)
> a reinstatement; (vi) a restoration; (vii) a
> reemployment; (viii) a performance evaluation...; (ix)
> a decision concerning pay, benefits, or awards...; (x)
> a decision to order psychiatric testing or examination;
> and (xi) any other significant change in duties,
> responsibilities, or working conditions.

Title 5 U.S.C. §2302(a)(2)(A); *see also Weaver*, 87 F.3d at 1432-33 (admonishment is a prohibited personnel action).

In this case, there is no allegation that a prohibited "personnel action" has taken place *vis-a-vis* the First Amendment claim and so, consequently, there is no prohibited "personnel practice."   As Firenze has correctly noted, "the promulgation and maintenance of such a rule [prohibiting employees from publicizing their grievances while at work] does not come within the definition of a 'personnel action'" under the statute. (#24 at 4)  If the claim does not involve a prohibited personnel practice taking a personnel action, but is an independent claim arising under the Constitution, then the CSRA does not require that the claim be filed with the OSC prior to judicial review. *Weaver*, 87 F.3d at 1434-35 (constitutional claim could be isolated from the other claims in the complaint involving personnel action); *see also Mitchum v. Hurt*,

19

73 F.3d 30, 35 (3rd Cir. 1995) (permitting federal employee to pursue constitutional claim for injunctive relief without exhausting administrative remedies); *Ramirez v. U.S. Customs and Border Prot.*, 709 F. Supp.2d 74, 82 (D.D.C. 2010)(citing *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990) ("Only in the unusual case in which the constitutional claim raises issues totally unrelated to the CSRA procedures can a party come directly to district court.")  In the absence of a personnel action, the CSRA does not require that this claim be brought before the OSC prior to instituting an action in federal court.

Accordingly, the Court has subject matter jurisdiction to hear Count II of the complaint.

## C. Count III

Count III of the complaint alleges that the NLRBU violated its statutory and contractual duty of fair representation by settling Firenze's grievances prior to arbitration. (#1 ¶ 43)  The statutory breach and contractual breach are addressed in turn.

Under Supreme Court jurisprudence, a breach of the duty of fair representation is an "unfair labor practice." *Karahalios v. National Federation of Federal Employees, Local 1263*, 489 U.S. 527, 532 (1989) ("Title VII also

makes it clear that a breach of the duty of fair representation is an unfair labor practice, for it provides that it is 'an unfair labor practice for a labor organization ... to otherwise fail or refuse to comply with any provision of this chapter.'") (quoting 5 U.S.C. §7116(b)(8)). Therefore, the Court looks to the statute governing unfair labor practices in its determination of whether jurisdiction exists for Count III of the complaint.

In relevant part the statute states:

> (a)  (1) If any agency or labor organization is charged by any person with having engaged in or engaging in an unfair labor practice, the General Counsel [of the Federal Labor Relations Authority] shall investigate the charge and may issue and cause to be served upon the agency or labor organization a complaint...
> (2) Any complaint under paragraph (1) of this subsection shall contain a notice -
> (A) of the charge;
> (B) that a hearing will be held before the Authority (or any member thereof or before an individual employed by the authority and designated for such purpose); and
> © of the time and place fixed for the hearing.

Title 5 U.S.C. § 7118.

This statute has been interpreted to confer exclusive jurisdiction over duty of fair representation claims to the FLRA, and to deny employees a private cause of action against their unions for such a breach. *Karahalios*, 489 U.S. at 536

("Had Congress intended the courts to enforce a federal employees union's duty of fair representation, we would expect to find some evidence of that intent in the statute or its legislative history. We find none."); *see also Frazier v. Fairhaven School Community*, 276 F.3d 52, 68 (1st Cir. 2002) (determining whether federal statute confers private right of action requires compelling evidence of congressional intent because presumption against an implied private right of action in federal statutes) (citations omitted).

There are only three instances under the CSRA in which Congress permits the judiciary to become involved in an unfair labor practice claim.  First, an individual aggrieved by a final FLRA order may seek review from the appropriate federal circuit court of appeals. Title 5 U.S.C. §7123(a).  Second, the FLRA may seek judicial enforcement of its orders, including appropriate temporary relief or a restraining order. Title 5 U.S.C. §7123(b). Lastly, the FLRA may seek temporary injunctive relief to assist in the discharge of its duties. Title 5 U.S.C. §7123(d).  Because this claim has not yet gone before the FLRA, Count III does not fall within any of these exceptions.

The only other instance in which judicial involvement is permitted is when a duty of fair representation claim is brought in conjunction with a breach of contract claim, in a so-called hybrid action. *Vaca v. Sipes*, 386 U.S.

171, 188 (1967) ("Given the strong reasons for not pre-empting duty of fair representation suits in general, and the fact that the courts in many § 301 suits must adjudicate whether the union has breached its duty, we conclude that the courts may also fashion remedies for such a breach of duty.").  For a hybrid action to be brought in federal court, the agency must have been formed under § 301 of the Labor-Management Relations Act of 1947 ("LMRA") because the Supreme Court has declined to extend the provisions of § 301 to agencies organized under Title VII of the CSRA. *Karahalios*, 489 U.S. at 536 ("Section 301 has no equivalent under Title VII; there is no provision in that Title for suing an agency in federal court."); *see also Abbott v. United States*, 144 F.3d 1, 4 (1st Cir. 1998) ("[A]s the Supreme Court has held, no parallel private cause of action may be implied from the CSRA."); *Montplaisir v. Leighton*, 875 F.2d 1, 5 (1st Cir. 1989) ("[D]istrict courts cannot entertain federal employees' fair representation suits.").  Because the NLRBU is organized under Title VII of the CSRA, the claim cannot be brought in as part of a hybrid action.

The claim also cannot be brought in on supplemental jurisdiction grounds.  Although the claim "form[s] part of the same case or controversy" as Count II of the complaint, the jurisdiction over unfair labor practices granted to the FLRA preempts the jurisdiction of federal courts with respect to such

23

issues. Title 28 U.S.C. §1367(a) ("Except as provided in subsections (b) and (c)

*or as expressly provided otherwise by Federal statute* ... the district courts shall

have supplemental jurisdiction over all other claims that are so related...")

(emphasis added).

Accordingly, the Court does not have jurisdiction to hear the statutory

breach of duty claim.

Firenze argues, in the alternative, that Count III of the complaint can be

brought in on contractual grounds, rather than under Title VII. (#1 ¶ 43; #17

at 30)  It is true that the relationship between a national federal sector union

and the employees covered by its collective bargaining agreement is a

contractual relationship, and that the agreement represents a contract between

the parties. (#17 at 29)  The plaintiff argues that "Title VII does not expressly

forbid a contractually-created private right of action to enforce the duty of fair

representation" and "to infer a Congressional prohibition would raise a

constitutional question which... must be avoided." (#17 at 38) Firenze's

contentions notwithstanding, the Court does not have jurisdiction to hear this

claim on contractual grounds.

The duty of fair representation is a statutory duty. *Tunnicliff v. Apfel*, 160

F. Supp.2d 147, 149 (D. Mass. 2001) ("Breach of the duty of fair

representation constitutes an unfair labor practice under the CSRA ... Unfair labor practice complaints are adjudicated by the FLRA... The reference to contract law in Tunnicliff's complaint is unavailing.") (citing *Celli v. Schoell*, 995 F. Supp. 1337, 1342-43 (D. Utah 1998) (attempt to characterize claim as one for breach of contract, rather than unfair labor practice under the CSRA, did not confer jurisdiction on district court)).  The duty is codified throughout Title VII of the CSRA. Its strength comes from the fact that courts have the ability to enforce, or overrule, final orders of the FLRA. Title 5 U.S.C. §7123(a), (b), (d).  If fair representation was a contractual duty, then by definition a breach of fair representation would be a breach of the collective bargaining agreement.  To report such a breach, the employee would have to resort to the grievance procedures outlined in the collective bargaining agreement. Title 5 U.S.C. §7121(a)(1) ("[A]ny collective bargaining agreement shall provide...the exclusive administrative procedures for resolving grievances which fall within its coverage."); *see also* Title 5 U.S.C. §7103(a)(9)(C)(I) (A grievance is any complaint concerning "...a claim of breach, of a collective bargaining agreement"). Because the NLRBU's collective bargaining agreement provides for a "three-step grievance process, *culminating* in third-party arbitration," judicial review of the final order would not be available to the aggrieved

25

employee. (#16 at 2) (emphasis added).

Plainly stated, if fair representation was a contractual duty, rather than a statutory duty, this Court still would not have original jurisdiction to hear the claim.  Nor would the Court have supplemental jurisdiction over the claim. Although the alleged breach is "part of the same case or controversy" as Count II, the "exclusive administrative procedures" in the CSRA preempt the jurisdiction of federal courts with respect to alleged breaches of the collective bargaining agreement. Title 28 U.S.C. §1367(a); Title 5 U.S.C. §7121(a)(1). Accordingly, this Court does not have jurisdiction to hear Count III of the complaint, on statutory or contractual grounds.

Because there is no subject matter jurisdiction over Count III, the merits of the Rule 12(b)(6) motion need not be reached.

### V. Recommendation

For the reasons stated, I RECOMMEND that the Motion To Dismiss (#8) be ALLOWED to the extent that dismissal is sought with respect to Count III under Rule 12(b)(1), Fed. R. Civ. P.  I FURTHER RECOMMEND that Defendant NLRB's Motion To Dismiss For Lack Of Subject Matter Jurisdiction (#15) be ALLOWED with respect to Count I and DENIED with respect to Count II.  I FURTHER RECOMMEND that Plaintiff's Motion for Partial Summary Judgment

(#18) be found to be MOOT.

## VI.  *Review by the District Judge*

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review.  *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1st Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

January 10, 2013.